IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUNJIE PENG, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-1344 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Junjie Peng ("Plaintiff") brings suit against certain partnerships and unincorporated associations, listed on Schedule A to the complaint, for patent infringement in violation of 35 U.S.C. § 271. See [1] (complaint); [4-2] (sealed Schedule A). On March 29, 2021, the Court granted Plaintiff's motion for a temporary restraining order ("TRO"). See [15]. The Court later extended the TRO to April 26, 2021. See [21]. The TRO restrained all defendants named in Schedule A from selling or offering for sale products that infringe Plaintiff's patents and froze defendants' accounts in U.S.-based financial institutions. Plaintiff subsequently filed a motion requesting that the Court convert the TRO to a preliminary injunction. See [25]. Defendants Techplus Direct, Winonly Direct, Hanpure Inc., and SP Health ("Defendants") opposed the preliminary injunction. The other defendants named in Schedule A failed to respond to the motion; therefore, the Court entered a preliminary injunction against those defendants, see [33], and gave Defendants time to respond to Plaintiff's motion. See [38], [50]. The motion for preliminary injunction is now fully briefed. For the reasons explained below, Plaintiff's motion for a preliminary injunction [25] is granted as to Defendants. The Preliminary Injunction Order

entered by the Court on April 30, 2021 [33] is extended to cover Defendants.  This case is set for telephonic status hearing on September 24, 2021 at 9:00 a.m.  An initial joint status report is due September 21, 2021 (for more information, see the Court's webpage concerning "Initial Status Reports and Conferences," https://www.ilnd.uscourts.gov/judge-info.aspx?YcR9etkCy90= ).  At the status hearing, the Court and parties will discuss, among other things, the extent of the asset freeze order and whether it should be modified.

**I.        Background**

The following facts are drawn primarily from the complaint [1].  Plaintiff is a citizen and resident of China and the inventor and owner of U.S. Design Patent No. D870,062 (the "'062 Patent" or "Patent") titled "Wireless Sports Headband."  This product is a headband with built-in wireless Bluetooth speakers.  Plaintiff offers this product for sale via online retailers such as Amazon.com.  According to the complaint, Plaintiff has established his products as the first to market and has an established reputation and quality reviews.

Defendants are businesses that, on information and belief, reside in the People's Republic of China.  However, the complaint alleges, "[t]actics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network."  [1] at 4.  Defendants conduct business throughout the United States, including within this judicial district, via fully interactive, commercial online marketplaces.  On information and belief, Defendants have sold and continue to sell to consumers within the United States, including in this district, products that infringe on Plaintiff's '062 patent ("Infringing Products").  Plaintiff has not granted Defendants a license or other permission to use the patented design.

Plaintiff alleges on information and belief that "Defendants are an interrelated group of infringers working in active concert to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the '062 Patent." [1] at 4. Plaintiff bases this belief on the fact that Defendants all sell and/or offer for sale on Internet stores "the same infringing products with minor variations as well as similar if not identical product images and descriptions," the same "accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, [and] similar hosting services." *Id*. at 4-5. The complaint further alleges that "infringers such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts, such as take down notices." *Id.* at 5. Also, on information and belief, "Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court." *Id*. According to the complaint, Defendants' infringement of the '062 Patent has been willful and their sale of Infringing Products is irreparably harming Plaintiff.

The complaint contains one count, for patent infringement in violation of 35 U.S.C. § 271. Plaintiff seeks an injunction, damages adequate to compensate for Defendants' infringement, and Defendants' profits.

## II.     Legal Standard

A court's determination of whether to issue a preliminary injunction involves a two-step inquiry, with a threshold phase and a balancing phase. See *Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021). In the threshold phase, the party seeking a preliminary injunction must

demonstrate: '(1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied.'" *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). If the movant successfully makes the required threshold showing, the Court proceeds to the "balancing phase," where it considers: "'(3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties.'" *Id.* at 545 (quoting *Abbott Labs.*, 971 F.2d at 11). The Court "employs a sliding scale approach" to the balancing analysis; "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) (internal quotations marks and citation omitted). "Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Courthouse News Service v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

### III. Analysis

#### A. Irreparable Harm to Plaintiff and Inadequacy of Legal Remedies

As an initial matter, the parties dispute whether Plaintiff should enjoy a rebuttable presumption of irreparable harm if he establishes a likelihood of success on the merits. However, the Supreme Court's decision in *eBay, Inc. v. MercExchange, LLLC*, 547 U.S. 388 (2006), "jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief" in cases of patent infringement. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). Instead, "in evaluating a request for an injunction after patent infringement had been established, the district court should … appl[y] 'the traditional four-factor

4

framework that governs the award of injunctive relief.'" *Illinois Tamale Co. v. El-Greg, Inc.*, 2019 WL 4395139, at *19 (N.D. Ill. Sept. 13, 2019) (quoting *eBay*, 547 U.S. at 394); see also *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 952 (N.D. Ill. 2018) (recognizing that *eBay* "reject[ed] the presumption of irreparable harm in patent cases"). That said, *eBay* did "not swing the pendulum in the opposite direction." *Robert Bosch LLC*, 659 F.3d at 1149. Thus, "[w]hile the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either." *Id*.

Plaintiff persuasively argues that Defendants' infringement of the '062 Patent by sale of the Infringing Products is likely to cause consumer confusion with genuine patented Products, resulting in harm to Plaintiff's reputation and loss of customers' goodwill. See [7-1] at 6; see also *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) (explaining that, under Federal Circuit precedent, "'[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm'" (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012))). Plaintiff also points out that "because Defendants are individuals and businesses who, upon information and belief, reside in the People's Republic of China, any monetary judgment is likely uncollectable." [7-1] at 8. This factor also weighs in favor of injunctive relief. See *Robert Bosch LLC*, 659 F.3d at 1155–56 (Fed. Cir. 2011) (explaining that "[w]hile competitive harms theoretically can be offset by monetary payments in certain circumstances, the likely availability of those monetary payments helps define the circumstances in which this is so").

Defendants argues that Plaintiff will not be irreparably harmed if a preliminary injunction is denied, as demonstrated by Plaintiff's "extreme delay" of "at least six months prior to seeking preliminary injunction against Defendants." [50] at 9. A patent-holder's unreasonable delay in

5

seeking a preliminary injunction "is a factor in evaluating irreparable harm." *Cordis Corp. v. Boston Scientific Corp.*, 99 Fed. Appx. 928, 934 (Fed. Cir. 2004); see also *Panduit Corp. v. Band-It-Idex, Inc.*, 2000 WL 1121554, at *24 (N.D. Ill. June 27, 2000) ("an undue delay in taking action may undermine a showing of irreparable harm—if the harm was so bad, why would one wait to seek a remedy?"). Nonetheless, "delay is only one factor to consider," and "'does not preclude, as a matter of law, a determination of irreparable harm.'" *Id*. (quoting *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1457 (Fed. Cir. 1988)). Under the facts here, the Court does not find Plaintiff's delay to be unreasonable or a basis for concluding that Plaintiff would not be irreparably harmed without a preliminary injunction. As Defendants acknowledge, Plaintiff filed a complaint with Amazon on December 30, 2020 concerning Defendants' sale of allegedly Infringing Products. After Amazon failed to remove the infringing products, Plaintiff brought this suit only a few months later, on March 10, 2021. See [1]. Plaintiff immediately sought a TRO, see [7], which was granted. See [15]. He then promptly moved for an extension of the TRO, see [16], which was also granted, see [21], and to convert the TRO to a preliminary injunction, see [25], [26]. When Defendants indicated that they opposed a preliminary injunction, see [31], the Court granted Defendants an extension of time to answer or otherwise plead, see [37], [38]. Defendants filed an opposition to the motion for preliminary injunction on July 9, 2021, see [50], which Plaintiff promptly responded to on July 23, 2021, see [53]. To the extent that Plaintiff has engaged in any delay at all, it was not unreasonable and does not indicate a lack of belief by Plaintiff that he will be irreparably harmed if an injunction against Defendants does not issue.

      For these reasons, the Court concludes that Plaintiff has made a persuasive showing that he will be irreparably harmed if a preliminary injunction is not issued and that legal remedies would be inadequate to compensate his injuries.

B.     **Likelihood of Success on the Merits**

"To establish a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). "A preliminary injunction should not issue if the accused infringer 'raises a substantial question concerning either infringement or validity.'" *Id.* (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)); see also *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014). Design patents enjoy a "presumption of validity." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1328 (Fed. Cir. 2015). And, since invalidity is an affirmative defense, "the patentee need not address invalidity as an initial matter in filing for a preliminary injunction." *Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369, 1375 n.7 (Fed. Cir. 2015). In their opposition to Plaintiff's motion for a preliminary injunction, Defendants raise interrelated arguments concerning infringement and validity.

"A design patent is infringed '[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.'" *Ethicon Endo-Surgery*, 796 F.3d at 1335 (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008)); see also *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). The patentee has the burden of proving infringement by a preponderance of the evidence. *Egyptian Goddess*, 543 F.3d at 679. "Where the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law." *Ethicon Endo-Surgery*, 796 F.3d at 1335. "If the claimed and accused designs are not plainly dissimilar, the

7

inquiry may benefit from comparing the claimed and accused designs with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art." *Id*. "Differences, however, must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." *Id.* Where the claimed design "includes several elements, the fact finder must apply the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation." *Id*. "An element-by-element comparison, untethered from application of the ordinary observer inquiry to the overall design, is procedural error." *Id*. (citing *Amini Innovation Corp. v. Anthony Cal., Inc*., 439 F.3d 1365, 1372 (Fed. Cir. 2006)).[1]

Defendants rely on the following figure from the '062 Patent and photograph of their allegedly Infringing Product to argue that Plaintiff's design and their design are not substantially similar, see [50] at 4:


Figure 3 of the D'062 Patent


Defendants' Product

Defendants argue that their design does not infringe the '062 Patent because it "does not include *all* the design features in the D'062 Patent." [50] at 5 (emphasis added). In particular, Defendants

---

[1] Defendant asserts that "in order to infringe, the accused device [must] appropriate the novelty in the patented device that distinguishes it from the prior art," which is called "the 'point of novelty' test." [50] at 5. However, "the point of novelty test, as a second and free-standing requirement for proof of design patent infringement, is inconsistent with the ordinary observer test laid down" by the Supreme Court in *Gorham* and, therefore, no longer the law. *Egyptian Goddess*, 543 F.3d at 672. "[U]nlike the point of novelty test, the ordinary observer test does not present the risk of assigning exaggerated importance to small differences between the claimed and accused designs relating to an insignificant feature simply because that feature can be characterized as a point of novelty." *Id*. at 677.

argue, "the curve and shape of headbands as well as the position of the control panel of the accused products are significantly different [than] those of the D'062 Patent." *Id*.

The Court is not persuaded by this argument. As an initial matter, Plaintiff is not required to show that the two designs have "all" the same features. [50] at 5. Further, Defendants' "element-by-element comparison" ignores the overall designs of the two products. *Ethicon Endo-Surgery*, 796 F.3d at 1335. While the control panel might be slightly further from the top of the headband on the Infringing Product, the overall designs of the Infringing Product and the D'062 Patent are extremely similar. The two designs have the same shape, with a flat top and curved bottom. (In the photograph above, the slight curve on the top of the headband appears to be a result of how the product is positioned in the photograph; the flat top of the design is more easily visible in the other photographs referenced by Defendant at page 6 of its brief, [50] at 6, which are copied below.) Also, as Plaintiff points out, both designs have the same square-shaped plate with rounded edges placed on the front center of the headband, with a circle in the top left corner, a line underlining the circle and extending laterally across the square shaped plate, and three circles equally spaced along the bottom of the square-shaped plate. See [53] at 7. The Court has no trouble concluding based on the images provided by the parties that an ordinary observer could be induced to purchase Defendants' product believing it to be Plaintiff's.

In support of their argument that the two designs are dissimilar, Defendants also rely on purported "prior art" referenced by the patent examiner. Defendants further rely on this "prior art" to argue that Plaintiff's patent is invalid. In support, Defendants rely on the following image that they appear to have created by combining an excerpt of the patent examiner's report with images they copied from Amazon.com, see [50] at 7:

9



Defendants argue based on this image that "because identical products to the accused products were cited as prior art by the patent examiner," this "proves that the accused products pre-date the D'062 Patent and are substantially dissimilar." [50] at 6.

However, it is not at all clear from the above image that the patent examiner considered the designs shown to be "prior art." Defendants do not explain how they reached this conclusion or provide any evidence. Cf. *Egyptian Goddess*, 543 F.3d at 678 (explaining that where

an accused infringer elects to rely on "comparison prior art as part of its defense against the claim of infringement, the burden of production of that prior art is on the accused infringer"). Regardless, whether the referenced photographs are properly considered "prior art" must be determined by reference to 35 U.S.C. § 102(b). To establish that the asserted reference is "prior art" under 35 U.S.C. § 102(b), Defendants bear the burden to establish, by clear and convincing evidence, that "it predates the critical date," which is determined by reference to § 106. *ATEN Int'l Co., Ltd. v. Uniclass Technology Co., Ltd.*, 932 F.3d 1364, 1368 (Fed. Cir. 2019) (citing *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996)). Pursuant to § 106(a)(1), "[a] person shall be entitled to a patent unless the claimed invention was . . . in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1). An exception exists, however, for "[d]isclosures made 1 year or less before the effective filing date of the claimed invention." *Id.*§ 102(b)(1). "A disclosure made 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention under subsection (a)(1) if … the subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor." *Id*. § 102(b)(1)(B).

Plaintiff has presented unrebutted evidence that he publicly disclosed his invention less than one year before the effective filing date of his claimed invention, and that this disclosure pre-dated Defendants' disclosure of what they now claim to be "prior art." Plaintiff's patent application was filed July 8, 2019. See [50] at 6. According to Defendants, Winonly Direct and Qifutech listed their allegedly Infringing Products on April 13, 2019, and July 6, 2019, respectively. See [50] at 7. However, Plaintiff publicly disclosed his invention by March 27, 2019, the date it was "first available" on Amazon.com. See [56] at 10; see also [53-1] at 2, ¶ 3.

11

Thus, although Plaintiff's effective filing date for the '062 Patent was after Defendants disclosed their allegedly Infringing Products by offering them for sale on Amazon, their disclosures fall within § 102(b)(1)(B) and do not constitute prior art. Defendants' disclosures both (1) predated Plaintiff's effective filing date by less than a year, and (2) were made after Plaintiff disclosed his design publicly by making it available for sale on Amarzon.com. The Court therefore concludes that Plaintiff has established a likelihood of success on the merits of its patent infringement claim and that Defendants fail to raise a substantial question concerning either infringement or validity. See *Metalcraft*, 848 F.3d at 1364.

    **C.**    **Balancing**

For the reasons discussed above, Plaintiff does not have an adequate remedy at law and will suffer irreparable injury should Defendants' actions not be enjoined. Defendants' sale of the allegedly Infringing Products on the same Internet markets as Plaintiff has and will continue to irreparably harm Plaintiff. The confusion caused by knock-off products in the stream of commerce damages the value of the brand and cannot be compensated by money alone. As the Seventh Circuit stressed in *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013), it is difficult to quantify the effect of consumer confusion on a brand—and that is all the more so on the limited record available at the preliminary injunction stage.

Defendants argue that the balance of harms tips in their favor because an order continuing to freeze their assets and Amazon accounts "would amount to shutting down Defendant's business" and cause them irreparable harm. [50] at 10. "A record showing that the infringer will be put out of business is a factor, but does not control the balance of hardships factor." *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1305 (Fed. Cir. 2013). But in this case,

Defendants have not made a "record showing" how the injunction will affect their business. *Id*. Instead, they rely on speculation, which is insufficient to tip the balance of harms in their favor. Further, "a court ought not reward a business built on an infringing product by allowing that infringement to continue in the face of a proper application for preliminary relief." *Advanced Communication Design, Inc. v. Premier Retail Networks, Inc*., 46 Fed. Appx. 964, 984-85 (Fed. Cir. 2002) (balance of harms favored preliminary injunctive relief in action for infringement of patent for apparatus that allowed multiple customers at music or video stores to simultaneously sample an audio or visual product at the store, despite claim that injunction would effectively put alleged infringer out of business; patentee had lost business, goodwill, and sales opportunities, and it was possible that alleged infringer had already benefitted at patentee's expense). At the upcoming status hearing, the Court will discuss with the parties whether the asset freeze should be modified to better reflect the extent of harm that Plaintiff has allegedly suffered.

Finally, the Court considers "whether the public interest favors the grant of an injunction." *Metalcraft of Mayville*, 848 F.3d at 1369. In general, the public interest "favor[s] the enforcement of patent rights to promote the encouragement of investment-based risk." *Apple Inc. v. Samsung Electronics Co., Ltd*., 735 F.3d 1352, 1371 (Fed. Cir. 2013) (internal citation and quotation marks omitted). However, the Court must also focus on "whether a critical public interest would be injured by the grant of injunctive relief." *Metalcraft of Mayville*, 848 F.3d at 1369. In this case, neither party has identified, and the Court is not aware, of any critical public interest that would be injured by enjoining Defendants from selling the allegedly Infringing Products during the pendency of the lawsuit. Consumers seeking to buy wireless sport headbands can buy them from Plaintiff or from other sellers who are not alleged to have infringed on Plaintiff's design patent.

13

Based on these considerations, the Court concludes that the balance of harms favors issuing a preliminary injunction against Defendants.

## IV. Conclusion

For the reasons explained above, Plaintiff's motion for preliminary injunction [25] is granted as to Defendants. The Preliminary Injunction Order previously entered against the other defendants in this case, see [33], shall be extended to cover Defendants Techplus Direct, Winonly Direct, Hanpure Inc., and SP Health. This case is set for telephonic status hearing on September 24, 2021 at 9:00 a.m. An initial joint status report is due September 21, 2021 (for more information, see the Court's webpage concerning "Initial Status Reports and Conferences," https://www.ilnd.uscourts.gov/judge-info.aspx?YcR9etkCy90= ). At the status hearing, the Court and parties will discuss, among other things, the extent of the asset freeze order and whether it should be modified.

Dated: September 14, 2021

_____
Robert M. Dow, Jr.
United States District Judge